DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

BADER ALHASANI,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-1525

_____

November 27, 2024

Appeal from the Circuit Court for Pinellas County; Michael F. Andrews, Judge.

J. Jervis Wise of Brunvand Wise, P.A., Clearwater, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and J. Wade Stidham, Jr., Assistant Attorney General, Tampa, for Appellee.

MORRIS, Judge.

Bader Alhasani appeals his judgment and sentences for two counts of delinquent in possession of a firearm. We affirm the judgment without further comment. However, because the trial court considered improper sentencing factors, Alhasani's sentences must be reversed.

BACKGROUND

Because we are reversing solely the sentences imposed, only a limited recitation of facts related to the underlying charges is necessary.

The underlying charges arose from a shooting incident, wherein Alhasani was himself struck by gunfire. During the investigation of the incident, police seized and searched a cell phone. The cell phone contained pictures and videos depicting Alhasani in possession of firearms in the months leading up to the shooting. Based on Alhasani's prior criminal record and based on the pictures and videos found on the cell phone, he was charged with two counts of being a delinquent in possession of a firearm.

Ultimately, Alhasani entered a guilty plea with a cap of ten years' imprisonment. At sentencing, defense counsel first discussed Alhasani's prior convictions, pointing out to the trial court that most of the crimes occurred when Alhasani was a minor, which defense counsel used to support his request for youthful offender sentencing. Defense counsel mentioned that Alhasani was "shot at that incident where they found his phone," apparently a reference to the incident leading to the underlying charges in this case. The trial court then inquired whether Alhasani had been shot once or twice, and defense counsel stated he thought Alhasani had been shot twice in two separate incidents. Although not entirely clear to this court, it appears that the trial court may have realized that Alhasani had been shot on a prior occasion once defense counsel referenced Alhasani being "shot at that incident."

In rebuttal, the prosecutor addressed the argument that most of Alhasani's prior convictions were from crimes committed when he was a minor. The prosecutor noted that Alhasani had been in the adult system. The prosecutor also explained that Alhasani had been previously charged with attempted murder but that it had been nolle prossed; the prosecutor stated that she would not address the facts of that crime, but she noted that Alhasani had been sitting in jail for almost

2

two years. The prosecutor continued by arguing that as soon as Alhasani had been released, "he already started making music videos with the guns." The trial court asked what it should do with that information, and the prosecutor responded, "You should read that as he has had two years to think about the shooting that he was involved in and did not make a positive change in his life." The prosecutor then stated that she was not contending that making a video was the worst act but that she wanted to give the trial court insight into Alhasani's mind.

The prosecutor referenced Alhasani having been released from jail and "going right back to being involved with guns" and getting "involved in a second shooting." Turning to the issue of whether Alhasani had been shot on a prior occasion, the prosecutor noted that Alhasani had been "involved in two separate shootings in which he is an alleged gunman, he's been shot twice on his own, and then he has the phone full of additional times in which he has a firearm on his person." The prosecutor referenced reports of Alhasani "in our system" that mentioned him leaving the house when he had an ankle monitor and his failure to abide by a curfew.

The trial court asked for confirmation that it was considering only the charges of delinquent in possession of a firearm, to which the prosecutor responded, "Yes." The trial court stated it understood the argument about Alhasani's prior record and about how Alhasani had not "got[ten] his act together." The trial court then asked the prosecutor whether the charges of delinquent in possession of a firearm called for a ten-year sentence or whether the trial court was "sentencing him because of things that he did in the past or did and got away with in the

3

past." The prosecutor responded that she arrived at the ten-year figure by looking at what sentences Alhasani would face if he was an adult.

In response to the State's argument, defense counsel maintained that the State was, in fact, trying to have Alhasani sentenced based on other charges that the State could not prove or for crimes for which he had not been charged. When the trial court asked whether it could consider information contained in a motion to suppress[1] about an observation by one of the victims of the shooting that Alhasani actually shot a gun, defense counsel asserted that while he could not answer that question, that conduct was "just uncharged" and was "not what he's here being sentenced on."

The trial court and defense counsel then discussed Alhasani's prior record, with the trial court noting that the crimes were not petty in nature and were felonies. Notably, the trial court referred to a "domestic [that] was not proceeded on," and the trial court commented that "[b]ecause it doesn't actually show a disposition . . . I'm going to ignore that one."

Ultimately, the trial court addressed Alhasani and, in doing so, noted that typically, a juvenile criminal defendant has a criminal record that includes crimes like drug or theft offenses. The trial court continued:

> They are seldom somebody who's been shot twice and allegedly shooting at somebody at least once and got the storied history that you seem to have, possession of a firearm. You got a prior - - and if the past is any prologue, this is not the last time you'll be standing in front of some judge, but if it is, it is a wonderful thing.

---

[1] The motion to suppress was ultimately denied.

The trial court declined to sentence Alhasani as a youthful offender, instead sentencing him to six years in prison followed by five years of probation.

## ANALYSIS

I.    Preservation

The State challenges Alhasani's ability to appeal his sentences, arguing that Alhasani waived the issue of the trial court's consideration of improper sentencing factors because he failed to file a motion pursuant to Florida Rule of Criminal Procedure 3.800(b). However, this court, in *Geske v. State*, 378 So. 3d 1199, 1203-04 (Fla. 2d DCA 2024), rejected that argument. We explained that such an error is an error in the sentencing process, rather than an error in the sentence itself, and that rule 3.800(b) is therefore an improper mechanism for preserving such errors. *See id.* at 1204. We further explained that reliance on improper sentencing factors is a due process violation that results in fundamental error and that an appellant raising such an argument is not required to have preserved that argument below. *Id.* Consequently, this issue is not waived.

II.    Merits

Trial courts are permitted "to consider the circumstances surrounding the primary offense and the defendant's prior record." *Nichols v. State*, 283 So. 3d 947, 950 (Fla. 2d DCA 2019). But they are prohibited from considering dismissed charges. *Id.* They are also prohibited from considering unsubstantiated allegations of misconduct or from relying on speculation about the possibility of the defendant committing crimes in the future. *Geske*, 378 So. 3d at 1208; *see also Wyrich v. State*, 370 So. 3d 1000, 1004 (Fla. 2d DCA 2023) (involving consideration of uncharged offenses). If a trial court does so, a due

5

process violation occurs, resulting in fundamental error. *Geske*, 378 So. 3d at 1209.

The State bears the burden to prove from the record as a whole that the trial court did not consider impermissible sentencing factors. *Id.* "[T]he mere fact that a sentencing judge hears improper information . . . during a sentencing hearing does not necessarily warrant reversal." *Wyrich*, 370 So. 3d at 1004. This court has recognized that "while trial judges may hear improper information from time to time during sentencing hearings, trial judges must act within the bounds of the law and neither consider nor act upon that improper information." *Id.* But an appellate court "must examine the record to determine whether it 'may reasonably be read to suggest' that a defendant's sentence was the result, at least in part, of the consideration of impermissible factors." *Mosely v. State*, 198 So. 3d 58, 60 (Fla. 2d DCA 2015) (quoting *Moorer v. State*, 926 So. 2d 475, 477 (Fla. 1st DCA 2006)). Where it is clear that the State directed a trial court's attention to uncharged misconduct or dismissed charges and it is likewise clear that the trial court relied on such information, this court must reverse and remand for resentencing before a different judge. *Wyrich*, 370 So. 3d at 1005. And if the record is at all unclear whether a trial court considered improper sentencing factors, the sentence must also be reversed. *See Nichols*, 283 So. 3d at 950 (reversing and remanding for resentencing before a different judge where the record as a whole was unclear as to whether the trial court considered an uncharged homicide in rendering the sentence).

In this case, the sentencing transcript suggests that the trial court, at least in part, considered improper sentencing factors. The trial court correctly recognized that it was precluded from considering some things such as the domestic violence incident that did not have a disposition.

6

The trial court also appeared to at least initially acknowledge that the sentences should be solely based on the charges of delinquent in possession of a firearm, rather than dismissed charges or past misconduct that did not result in criminal charges.

However, the prosecutor repeatedly referred to the attempted murder charge that was nolle prossed, noting that it was the second shooting that Alhasani was involved in. The prosecutor also referred to Alhasani's act of making videos with guns and his conduct in breaking curfew and leaving home with an ankle monitor. The prosecutor explained that she mentioned the videos that Alhasani made to give the trial court insight into Alhasani's mind, which is a very similar argument to the one made in *Wyrich*, wherein we determined that the State led the trial court to consider improper uncharged conduct during sentencing. *See Wyrich*, 370 So. 3d at 1005.

While not all of the trial court's comments are problematic, the trial court's reference to the fact that Alhasani had been shot twice (apparently a reference to the nolle prossed attempted murder charge) suggests that the trial court considered the dismissed charge in rendering the sentences. And the trial court's comment that "if the past is a prologue, this is not the last time you'll be standing in front of some judge" suggests that the trial court relied on speculation that Alhasani might commit crimes in the future. Both are improper sentencing considerations. *See Geske*, 378 So. 3d at 1208; *Nichols*, 283 So. 3d at 950. Consequently, we reverse Alhasani's sentences and remand for resentencing before a different judge. *See Wyrich*, 370 So. 3d at 1005; *Nichols*, 283 So. 3d at 951.

Affirmed in part; reversed in part.

BLACK and ROTHSTEIN-YOUAKIM, JJ., Concur.

———————————————————————

Opinion subject to revision prior to official publication.